### Toledo & Maumee Valley Ry. Co. v. Toledo Traction Co.

Where a street railway company contracts with another street railway company to permit the cars of such other company to run over its track, such other company cannot, under such contract, run the cars of a third connecting company over the tracks of such first company.

King, J..

This action is brought to enjoin the defendant from interfering with or obstructing the plaintiff from running certain cars over the tracks of the defendant, the Traction Company, in the city of Toledo. It was commenced in the court of common pleas on July 2, 1898. A trial was had, and from the judgment rendered appeal was taken to this court. The case is submitted here upon exhibits, the evidence offered in the court of common pleas, and some oral testimony taken here.

In November, 1896, the same plaintiff began an action for an injunction against the defendant, alleging substantially the same acts. That case was appealed to this court, and tried and decided here, in October, 1897. The opinion in that case Toledo & Maumee Valley Co. v. Toledo Traction Co., is reported in 8 Circ. Dec., 204.

The case arises over some disagreement between the parties as to terms, and the construction to be given to the terms, of a contract that had been made between the Traction Company and the plaintiff, allowing

it to run its cars and traffic over certain lines belonging to the defendant. The defendant the Traction Company, owns street railway privileges and tracks and cars in the city of Toledo, and the plaintiff owns similar privileges, tracks and cars on a line running on either side of the Maumee river from the city of Toledo southwesterly to the villages of Maumee and Perrysburg respectively, crossing the river at that point. They made a contract in June, 1894, the object of which is set forth in the third paragraph of it in these words:

"The parties hereto desire to make a mutual arrangement and agreement whereby said roads may be connected so that the traffic over the road of second party (the plaintiff in this case) may pass over the roads of first parties, so as to make a continuous circuit or belt line connecting the city of Toledo and the villages of Maumee and Perrysburg, without change of cars or delays of any kind."

Some time after that a street railroad company, which for short is denominated the Bowling Green Railroad Company, constructed a railroad from the village of Perrysburg to the village of Bowling Green, some few miles further south, which company entered into a contract with the plaintiff, by which it was to have certain rights and the plaintiff was to assume certain obligations, in the way of transporting passengers and traffic and cars of the Bowling Green railroad over its line; but the Bowling Green railroad made no contract with the defendant in this case by which its cars or traffic were to be transported over the defendant's lines of railway in the city of Toledo.

The case tried and decided before this court at the September term, 1897, presented certain facts for the consideration of the court from which it undertook to construe the rights of these parties as related to those facts. I might say here, it was not then, and is not now, a matter that is beyond controversy or free from doubt as to the construction that should be placed upon these contracts or the rights of the respective parties thereunder as affecting this controversy. The facts in that case, as stated in the opinion of this court, were that the plaintiff company through and under this arrangement with the Bowling Green company, at the time of the placing of the obstructions which the suit was brought to enjoin, was running a certain number of its own cars on its own tracks, and instead of confining them to its tracks, was running those cars over the tracks of the Bowling Green company, in a continuous line from the city of Toledo through the villages of Maumee and Perrysburg to Bowling Green and return; and likewise running them over the lines described in their contract upon which it had the right to run within the city of Toledo. We held in that case upon the facts there presented that the plaintiff was entitled to an injunction. Considering the doubtful character, however, of the questions involved, and the fact that we might not be clear how far the parties or the court might go in construing their rights, the court said at that time that the opinion and decision should be confined to the facts that were there presented; that the facts in the case concurred in making the cars and traffic which had been stopped the cars and traffic of the plaintiff railroad, coming fairly within the provisions of the contract, and which the defendants was bound to receive in the manner in which they had been tendered to it. After that decision the parties did not see fit to prosecute that case further.

Following the decision in October, in December or January next, the plaintiff company took off two of its cars that had been running for a year or more, and by agreement with the Bowling Green company arranged

that the Bowling Green company should furnish two cars in their place. The Bowling Green company purchased two new cars for that purpose and put them upon the track, perhaps in Jan. 1898, and commenced running them, and did run them from that time until this suit was commenced in July. About April of that year the plaintiff company took off two more of its cars, and the Bowling Green company, having two cars which it was not using, and which had been stored during this preceding controversy, put those two cars on. So that at the time ot the grievances which are complained of in this case the Bowling Green company was running four of its cars over its own tracks and road and over the tracks and road of plaintiff, and over the tracks and road of the defendant, and carrying such traffic and passengers as it could pick up along these lines. Thereupon the defendant obstructed those cars, refused to carry them. The defendant claims no right to obstruct any others in this case. This proceeding is to enjoin them from obstructing these cars.

It is unnecessary to review this case or to go over these contracts. We think, upon a consideration of the case as made, that it is essentially different from the other case. It may be that the facts show but little difference, and it is argued here, and urged upon us for consideration, that no more cars are being run over the defendant's road than were being run at the time of the trial of the other case. That of course cannot be a distinctive element; for this contract is to receive a fair construction. The Traction Company agreed that it would carry the cars and traffic of the Maumee Valley Company over the lines described in this contract, and whether it takes three or six cars to carry that traffic, defendant will be bound to do it; and it will hardly do to say that because no more cars are run this year than last, therefore the defendant cannot complain, even if compelled to carry the cars and the traffic of other railroad companies. If we were to make that the rule to determine the defendant's liability here, then it would be true that if the Maumee Valley Railroad Company, by reason of the building up of the country above the city, should require instead of three or four cars, or whatever number it has been heretofore running, eight cars, it could not run those cars under this contract. That construction the plaintiff would not agree to, for it is clear, under that contract, it would not be proper. It is clear that the defendant is bound to carry the cars and traffic of plaintiff.

That case was decided upon the ground solely that the traffic and cars which it was running were properly and fairly, under the terms of the contract, the traffic and cars which the Traction Company was bound to receive and carry; but we do think it makes a vast difference when the claim is made that the Maumee Valley Company may take the cars of any other railroad company that it comes in connection with, and run those cars over its track and over the track of the defendant companies, under this contract. Somewhere it seems evident that the line must be drawn, and we may as well draw it at this point as at any other. This may not seem a very large matter in and of itself, but the parties have invoked the jurisdiction of the court to determine this question, and we hold and decide that in this case, where it is shown that the cars which it is proposed to run are not the cars of the plaintiff company at all, but are the cars of another railroad company, running from off another railroad company's tracks upon its tracks before reaching defendant's lines, that the defendants are not bound to receive them, and that therefore they would be justified in stopping them before they come upon their tracks, or at the point where their tracks connected.

It is evident that questions of this kind are about to become very important, as other lines of railway in the near future will undoubtedly be constructed, either connecting with some of the roads involved in this controversy, or coming to the city of Toledo independently of them; and if those companies desire to run their traffic into the city of Toledo, it would seem that they will have to make arrangements with the defendant if they desire to use its tracks, or else secure a right over them in some other legal way, or an entrance along other streets of the city. We feel fully justified in saying that the plaintiff has not proved here an equitable case for injunction, and therefore the petition will be dismissed.

*King & Tracy,* for plaintiff.

*Barton Smith,* for defendants.